**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 15-cv-0671-WJM

SANDYNE FER RIELEY,

      Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

      Defendant.

---

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

---

      This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g).

Plaintiff Sandyne Rieley ("Rieley") challenges the final decision of Defendant, the

Commissioner of Social Security ("Commissioner"), denying her application for

supplemental security income benefits and disability insurance benefits.  The denial

was affirmed by an administrative law judge ("ALJ"), who ruled that Rieley was not

disabled within the meaning of the Social Security Act.  This appeal followed.

      For the reasons set forth below, the ALJ's decision is vacated and this case is

remanded to the Commissioner for further proceedings consistent with this order.

## I.  BACKGROUND

      Rieley was born on January 30, 1953, and was 54 years old on the alleged onset

date of February 17, 2007.  (Administrative Record ("R.") (ECF No. 15) at 131.)  Rieley

graduated from high school and has, in the last fifteen years, worked as a youth

ministry director in two different Catholic parishes.  (R. at 42–47, 58–59.)

Rieley applied for disability insurance benefits and supplemental security income on May 23, 2012.  (R. at 131.)  She claimed she is disabled due to the persisting results of a February 17, 2007 car accident, namely, traumatic brain injury, neck pain, back pain, shoulder pain, and rib pain on the left side of her body.  (R. at 170.)  Her application was denied on December 5, 2012.  (R. at 74–75.)  Rieley requested and received a hearing in front of an ALJ, Mark R. Dawson.  (R. at 39.)  On December 5, 2013, the ALJ issued a written decision in accordance with the Commissioner's five-step sequential evaluation process.[1]

At step one, the ALJ found that Rieley had engaged in substantial gainful activity after her claimed disability onset date of February 17, 2007.  Specifically, she had continued to work as a youth ministry director until the end of 2011.  (R. at 21.)  The ALJ therefore chose to consider Rieley's application only as it relates to the time period beginning January 1, 2012.  (*Id.*)  Since that date, the ALJ found that Rieley has not engaged in substantial gainful activity.  (*Id.*)

At step two, the ALJ found that Rieley suffered from "the following severe impairments: (1) Musculoskeletal strains and sprains of the neck and shoulders; (2) Obesity; and (3) Lumbar degenerative disc disease."  (R. at 22.)

At step three, the ALJ found that Rieley's impairments, while severe, did not

---

[1] The five-step process requires the ALJ consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to her past relevant work; and, if not, (5) could perform other work in the national economy.  *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).  The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five.  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

meet or medically equal any of the impairments listed in the Social Security regulations. (R. at 23.)

Before proceeding to step four, the ALJ assessed Rieley's residual functional capacity ("RFC").  The ALJ concluded that Rieley has the RFC "to perform the full range of light work."  (R. at 24.)  Then, at step four, the ALJ concluded that Rieley could continue to perform her past relevant work as a youth ministry director (categorized by a vocational expert as a "pastoral assistant").  (R. at 27.)

Given this conclusion, the ALJ did not need to reach step five, but found at step four alone that Rieley was not entitled to Social Security benefits.  (R. at 28.)  Rieley appealed to the Social Security Appeals Council.  (R. at 14.)  Rieley there submitted new evidence of a foot condition (described in more detail below) which she claims prevents her from performing the full range of light work.  (R. at 209–11.)  The Appeals Council denied review, stating that it "considered" the new evidence but found no reason to reevaluate the ALJ's decision.  (R. at 1–2.)  Rieley then filed this action seeking review of the ALJ's December 5, 2013 decision.  (ECF No. 1.)

## II.  STANDARD OF REVIEW

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied.  *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Id.*  "It requires more than a scintilla, but less than a preponderance."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).  Evidence is not

substantial if it is overwhelmed by other evidence in the record.  *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005).  In reviewing the Commissioner's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency.  *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).  "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III.  ANALYSIS

Rieley challenges the ALJ's conclusion that she maintains the RFC to perform the full range of light work.  According to the Social Security Administration, "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251.  Rieley argues that she experiences frequent foot pain that would prevent her from meeting that standard. (ECF No. 19 at 10–12.)

Rieley did not formally list foot pain as a potentially disabling condition.  (*See* R. at 170.)  The overwhelming focus of Rieley's medical records, of the subjects discussed in her hearing before the ALJ, and of the ALJ's eventual decision, was the lingering effects of Rieley's car accident, which was not the cause of her foot pain. Rieley freely admits that the effects of her foot pain "flew under the radar of the ALJ's attention" (ECF No. 19 at 10) and were "a side issue," although "an important one" (ECF No. 21 at 9).

Reports of foot pain are indeed part of the record.  For example, although Rieley

did not formally list foot pain as a disabling condition, it is something she mentions

frequently in narratives of her current conditions.  (*See, e.g.*, R. at 180, 183, 189, 190,

195.)  The ALJ noted these reports in his decision.  (R. at 25 ("She reported daily . . .

sharp and aching foot pain.  She stated that the pain prevented her from . . . standing

very long. . . .  She estimated that she could only walk around [the] block before

needing rest due to foot pain.").)

The ALJ also noted medical findings related to Rieley's feet.  The ALJ

considered an examination performed by neurologist Justin Moon, M.D., in February

2012, where Moon concluded that Rieley had diminished sensation to "vibration and

cold temperature at the ankle," and also a "wide-based gait and very poor tandem."[2]

(R. at 244 (cited by the ALJ at R. 26).)  The ALJ also considered an x-ray of Rieley's left

foot, as interpreted by Marc Sarti, M.D., which showed "[m]oderate hallux valgus with

bunion formation and associated degenerative changes, mild to moderate, at the first

metatarsal phalangeal joint," and also a "[p]rominent plantar calcaneal spur; this can be

associated with plantar fasciitis and/or heel pain."  (R. at 253 (cited by the ALJ at R. at

26).)

The ALJ additionally considered the report of state agency examining physician

Adam Summerlin, M.D.  (R. at 26.)  Dr. Summerlin noted "[b]ilateral feet pain" as one of

Rieley's "chief complaints":

> The claimant reports that she had "congenital foot problems"
> for which she never required surgery or braces.  She has

---

[2] The Court assumes that "tandem" refers to the heel-to-toe straight-line walking test.
*See* Helen S. Cohen *et al.*, "Sharpening the Tandem Walking Test for Screening Peripheral
Neuropathy," *available at* http://www.ncbi.nlm.nih.gov/pmc/articles/PMC3801263/.

> had pain from childhood which has slowly gotten worse and
> is now constant, sore, 3/10 pain which increases to a
> burning pain by the end of the day. She reports some
> swelling of the feet at night as well as "flares of plantar
> fasci[i]tis." Her pain is worse with walking or standing, better
> with physical therapy, rest, hot baths, elevation, and light
> exercises.

(R. at 247.) Dr. Summerlin nonetheless found that Rieley's "[t]andem walk is within

normal limits, though she does overpronate both feet. She is unable to toe walk due to

her foot pain but has no difficulty with heel walking." (R. at 249.) Dr. Summerlin

diagnosed "[f]lat foot deformity," and assessed that Rieley's "standing and walking

capacity is up to six hours due to flat foot deformity." (R. at 250.)

The ALJ gave Dr. Summerlin's opinion in this regard "great weight" because it

was "consistent with the medical evidence of record, in particular Dr. Summerlin's

examination[,] as the claimant has minimal treatment for her alleged physical

impairments." (R. at 26.) Although this reasoning appears to be circular

(Dr. Summerlin's opinion is consistent with Dr. Summerlin's opinion), in context the ALJ

appears to be saying that Rieley's treating physicians did not generate very much

objective medical evidence regarding her foot condition, and so Dr. Summerlin's opinion

deserves credit in large part because it stands nearly alone in the amount of supporting

evidence it provides.

Rieley spends significant time attacking Dr. Summerlin's conclusions. (*See* ECF

No. 19 at 8, 11.) She goes so far as to say that Dr. Summerlin "failed to add 2+2

together" when he was told of symptoms that seem to suggest plantar fasciitis. (ECF

No. 21 at 3–4.) Continuing with a mix of metaphors, Rieley says that the combination

of Dr. Sarti's x-ray evaluation (which was obtained at Dr. Summerlin's request) and

6

Rieley's own reports of foot pain constituted "a red flag . . . thrown in [Dr. Summerlin's] face—the alternate diagnosis of plantar fasciitis—and [he] dropped the ball." (*Id.* at 4.)

Given this line of attack, one would expect Rieley to connect it to the ALJ's decision, *e.g.*, with an argument that Dr. Summerlin's conclusions were allegedly so unsupported that the ALJ could not have reasonably given them any credit. But Rieley never makes this argument. Moreover, Rieley cannot argue that the ALJ entirely ignored her subjective complaints of foot pain. The ALJ specifically noted them, but also concluded that Rieley's "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with [the RFC] assessment." (R. at 25.)

Rieley's primary challenge appears to be to this credibility finding. (*See* ECF No. 19 at 11–12.) In other words, she believes that the ALJ should not have credited Dr. Summerlin's conclusion without further analysis, and specific focus, on her own subjective complaints of pain. Rieley accordingly requests that this Court remand for additional consideration of her foot pain at step two, in the RFC assessment, and in step five (which the ALJ did not reach, but presumably would if he determined that Rieley could not perform the full range of light work). (ECF No. 19 at 13.) She further believes that such analysis should also account for her obesity, which the ALJ considered hypothetically as it might relate to arthritis in a weight-bearing joint, but not specifically as to Rieley's feet. (*Id.* at 12; R. at 26.)

Rieley faces an uphill battle in this regard. When the Commissioner denied her disability claim at the initial level, the explanation of that denial specifically adopted Dr. Summerlin's conclusion about Rieley's ability to stand and walk for up to six hours in

a workday.  (*See* R. at 68, 72.)  If that truly was the Commissioner's error, one would

expect the subsequent ALJ hearing to focus on it.  However, although Rieley's counsel

conducted almost the entire examination of Rieley at the hearing, counsel asked no

questions regarding foot pain.  The only evidence that happened to come out

suggesting limited walking ability is Rieley's admission that she has, at least once, used

an electric cart while at the grocery store.  (R. at 56.)  Otherwise, the evidence

suggested that walking was a helpful pasttime.  To avoid falling asleep during the day,

which disrupts her nighttime sleep, Rieley testified that she sometimes takes a walk

outside.  (R. at 51.)  She will also "usually go take a morning walk if it's nice outside."

(R. at 57.)  This walk is "up to the corner and back down," an unspecified distance.  (*Id.*)

It was not until proceedings before the Appeals Council that Rieley finally drew

attention specifically to her lack of ability to be on her feet for hours at a time.  In an

affidavit submitted to the Appeals Council, Rieley claimed that Dr. Summerlin watched

her walk for a total of 12 feet or less, which would allegedly be insufficient to judge her

overall walking capacity: "Walking 10–12 feet it does not cause much pain immediately.

Walking ½ block or more is extremely painful and causes me to slow down."  (R. at

211.)

Social Security claimants may submit new evidence when seeking review from

the Appeals Council, so long as such evidence is "new and material" and "relates to the

period on or before the date of the administrative law judge hearing decision."  20

C.F.R. § 404.970(b).  If the evidence meets these requirements, the Appeals Council

must evaluate it along with the evidence previously in the record.  Although the Appeals

Council need not discuss the new evidence substantively, *see Foy v. Barnhart*, 139 F.

App'x 39, 42 (10th Cir. 2005), its failure to remand to the ALJ can still be reversible error if there is "a reasonable probability" that the ALJ would have reached a different decision in light of the new evidence, *Proctor v. Astrue*, 665 F. Supp. 2d 1243, 1251 (D. Colo. 2009).

Rieley does not specifically challenge the Appeals Council's decision not to remand.  Solely in the interests of justice, however, the Court construes her general argument very broadly so as to as encompass such a claim.  Moreover, the Court finds that Rieley's new evidence creates a reasonable probability that the ALJ would have reached a different decision.  Rieley's affidavit related to events that took place before the ALJ's hearing decision, and, if believed, it significantly undermines the credibility of Dr. Summerlin's walking/standing evaluation, which was essential to the ALJ's finding that Rieley could perform the full range of light work.  The Court accordingly finds that the Appeals Council erred in failing to remand the matter to the ALJ for consideration of this new evidence.  This Court will vacate the ALJ's decision and remand for further proceedings.

The Court does not intend by this opinion to suggest the results that should be reached on remand; rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand, including foot pain, both on its own and in connection with Rieley's obesity.  *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case].  Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV.  CONCLUSION

For the reasons set forth above, the Commissioner's decision is VACATED and this case is REMANDED to the Commissioner for rehearing.

Dated this 7th day of April, 2016.

BY THE COURT:

William J. Martinez
United States District Judge